UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAREEM CULBRETH,<br><br>        Plaintiff,<br><br>   -against-<br><br>MANUEL *et al.*,<br><br>        Defendants. | **OPINION & ORDER**<br><br>24-CV-00497 (PMH)<br>24-CV-02148 (PMH) |

PHILIP M. HALPERN, United States District Judge:

Kareem Culbreth ("Plaintiff") brings two related actions *pro se* and *in forma pauperis*, pressing constitutional claims under 42 U.S.C. § 1983 and a related claim under New York state law. *See Culbreth v. Manuel et al.*, 24-CV-00497 ("*Culbreth I*"); *Culbreth v. Manuel et al.*, 24-CV-02148 ("*Culbreth II*"). As explained *infra*, both actions are nearly identical. Pending before the Court are the defendants' respective motions to dismiss both actions pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, the defendants' motion to dismiss in *Culbreth I* is GRANTED, and the defendants' unopposed motion to dismiss in *Culbreth II* is GRANTED.

**BACKGROUND**

I. Procedural Background

Plaintiff brings two related actions arising out of the same event and pressing the same claims.

  A. *Culbreth I*

On January 22, 2024, Plaintiff commenced the first of his related actions against Correction Officer Manuel and Orange County Jail, asserting claims for relief under New York state law and 42 U.S.C. § 1983, predicated upon violations of his Constitutional rights. (*See Culbreth I* Doc. 1,

"*Culbreth I* Compl."). The Court *sua sponte* added Sergeant Brahm as a defendant based on the allegations in the Complaint and substituted Orange County (together with Correction Officer Manuel and Sergeant Brahm, the "*Culbreth I* Defendants") for Orange County Jail pursuant to Federal Rule of Civil Procedure 21. (*Culbreth I* Doc. 6).

On April 24, 2024, Plaintiff, in response to pre-motion letter correspondence, filed a letter explaining why this action should not be dismissed. (*Culbreth I* Doc. 24, "*Culbreth I* Pl. Letter"). On May 3, 2024, the Court set a briefing schedule for the *Culbreth I* Defendants' motion to dismiss. (*Culbreth I* Doc. 27). The *Culbreth I* Defendants, pursuant to the Court's schedule, filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) on May 31, 2024. (*Culbreth I* Doc. 32; *Culbreth I* Doc. 34, "*Culbreth I* Def. Br."). Plaintiff did not file opposition. However, pursuant to the Court's order, the *Culbreth I* Defendants filed to the docket, on July 11, 2024, two affidavits they received from Plaintiff. (*Culbreth I* Doc. 39, *Culbreth I* Doc 39-1, "*Culbreth I* Pl. Aff. #1"; *Culbreth I* Doc. 39-2, "*Culbreth I* Pl. Aff. #2").[1] The *Culbreth I* Defendants' motion to dismiss was fully briefed with the filing of their reply on July 12, 2024 ("Reply").[2] (*Culbreth I* Doc. 41).

---

[1] Given the liberality afforded *pro se* litigants, it is appropriate to consider new allegations in a *pro se* plaintiff's opposition to a motion to dismiss where they are consistent with the allegations contained in the pleading. *Vail v. City of New York*, 68 F. Supp. 3d 412, 427 (S.D.N.Y. 2014) ("Where new allegations in a *pro se* plaintiff's opposition memoranda 'are consistent with the allegations contained' in the Complaint, they may be read 'as supplements to th[e] pleadings . . . .'" (quoting *Boyer v. Channel 13, Inc.*, No. 04-CV-02137, 2005 WL 2249782, at *6 (S.D.N.Y. Mar. 9, 2005))). Accordingly, the Court considers on this motion the additional allegations relevant to this motion in Plaintiff's letter and two affidavits.

[2] The *Culbreth I* Defendants attach, in support of the Reply, various jail records that Plaintiff purportedly references in his opposition submissions. (*Culbreth I* Doc. 40, Exs. D-G; *see also* Reply at 8-12). The Court, on this motion, will not consider these records, which were not referenced in, integral to, or attached to the Complaint, nor attached to Plaintiff's opposition submissions. *See Hutson v. Notorious B.I.G., LLC*, No. 14-CV-02307, 2015 WL 9450623, at *3 (S.D.N.Y. Dec. 22, 2015) (declining to consider documents on a motion to dismiss where they were "not referenced in the" operative complaint).

B. *Culbreth II*

On March 19, 2024, Plaintiff commenced the second of his related actions against Defendants Manuel and Brahm (the "*Culbreth II* Defendants") and alleged the same claims for relief as in *Culbreth I*. (*See Culbreth II* Doc. 1, "*Culbreth II* Compl."). In addition to naming similar defendants, Plaintiff's allegations in this new complaint are nearly identical to the allegations in *Culbreth I*.[3] On August 20, 2024, Plaintiff, in response to pre-motion letter correspondence, filed a letter to the Court explaining why this action should not be dismissed. (*Culbreth II* Doc. 15). On August 22, 2024, the *Culbreth II* Defendants filed a motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). (*Culbreth II* Doc. 17; *Culbreth II* Doc. 19, "*Culbreth II* Def. Br.").

Pursuant to the briefing schedule set by the Court, Plaintiff's opposition was due on September 19, 2024. (*Culbreth II* Doc. 16). The docket indicates that a copy of the Court's Order setting the briefing schedule was mailed to Plaintiff on August 22, 2024 (*see Culbreth II* Aug. 22, 2024 Entry), and that the *Culbreth II* Defendants served their motion papers on Plaintiff (*Culbreth II* Doc. 21). Plaintiff did not file opposition papers. On September 26, 2024, the Court *sua sponte* extended Plaintiff's time to oppose the motion to October 25, 2024, warned Plaintiff no further extensions would be granted, and cautioned that if Plaintiff failed to file opposition by October 25, 2024, the motion would be deemed fully submitted and unopposed. (*Culbreth II* Doc. 23). The docket indicates that a copy of the Court's September 26, 2024 Order was mailed to Plaintiff. (*See Culbreth II* Sept. 27, 2024 Entry). Thus, as is clear from the docket, Plaintiff was sent the *Culbreth II* Defendants' moving papers as well as an additional document notifying him that they had moved

---

[3] Indeed, Plaintiff, based on his Complaint, appears to have mistakenly believed that his first action was "terminated" after he made an offer to "settle." (*Culbreth II* Compl. at 9).

3

to dismiss the Complaint. Accordingly, the Court deems the motion fully submitted and unopposed.

II. Factual Background

Plaintiff alleges that while Defendant Manuel and another officer transported him back to the Orange County Correctional Facility ("OCCF") via transport van on January 2, 2024, Defendant Manuel "slammed into the back" of another car. (*Culbreth I* Compl. at 4; *Culbreth II* Compl. at 4-5, 12).[4] Plaintiff alleges that Defendant Manuel "was smoking a vape" right before the motor vehicle accident and that Plaintiff was not "buckled in." (*Culbreth I* Compl. at 4; *Culbreth II* Compl. at 12). The force of the accident, as alleged, caused Plaintiff to "bang[] [his] [f]ace against the barrier" in the van. (*Culbreth I* Compl. at 4; *Culbreth II* Compl. at 12). Plaintiff alleges he then "[i]mmediately got nauseous," "threw up," and suffered from a "migraine" after returning to his cell. (*Culbreth I* Compl. at 4; *Culbreth II* Compl. at 5). Plaintiff also alleges that he suffered a "severe concussion and [a] chipped tooth." (*Culbreth I* Pl. Aff. #2 at 3). Defendant Brahm, that same day, "refused [Plaintiff] medical attention." (*Culbreth I* Compl. at 5; *Culbreth II* Compl. at 5). Plaintiff alleges that he still experiences nausea and suffers from "headaches daily." (*Culbreth I* Compl. at 5; *Culbreth II* Compl. at 5).

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

---

[4] Citations to specific pages of court filings on the docket correspond to the pagination generated by ECF.

*Twombly*, 550 U.S. 544, 570 (2007)).[5] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y.

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[*p*]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss, as is the case here, "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the claim challenged on this motion even without the benefit of formal opposition to the motion.

**ANALYSIS**

I. *Culbreth II*

The *Culbreth II* Defendants argue that Plaintiff's second related action should be dismissed as "duplicative." (*Culbreth II* Def. Br. at 8-9). The Court agrees. "As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). To properly invoke the rule, "[t]here must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same." *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (quoting *The Haytian Republic*, 154 U.S. 118, 124 (1894)).

Here, both actions arise out of the January 2, 2024 motor-vehicle crash. (*Compare Culbreth II* Compl. at 4-5, *with Culbreth I* Compl. at 4). Both actions allege the same injuries: immediately throwing up on the day of the incident as well as headaches and nausea lasting for weeks. (*Compare Culbreth I* Compl. at 5, *with Culbreth II* Compl. at 5, 12). Both actions seek monetary relief, and, liberally construed, allege the same Section 1983 and state-law claims. (*Compare Culbreth II* Compl. at 5, 12, *with Culbreth I* Compl. at 5). And Plaintiff, in both actions, presses claims against Correction Officer Manuel and Sergeant Brahm. (*Compare Culbreth I* Compl. at 3, *with Culbreth II* Compl. at 3, 5). There is thus sufficient similarity between the two actions to apply the rule against duplicative litigation. *See Greenaway v. Apple-Metro, Inc.*, No. 13-CV-02818, 2013 WL 12216603, at *2 (E.D.N.Y. Nov. 19, 2013) (dismissing under duplicative action rule action that "substantially overlap[ped]").

Moreover, the few differences between *Culbreth I* and *Culbreth II* are immaterial. That Plaintiff names Orange County as a defendant in his first, but not second, action does not change

the analysis; Plaintiff, in *Culbreth II*, presses the same claims against the same individual defendants. *Cf. McFarlane v. Iron Mountain Info. Mgmt. Servs., Inc.*, No. 17-CV-09739, 2018 WL 941748, at *2 (S.D.N.Y. Feb. 16, 2018) (dismissing under the duplicative action rule despite both actions not containing "identical" parties). Plaintiff did not, in his pre-motion letter filed with the Court, meaningfully distinguish the two actions. The fact that his injuries—all arising from the January 2, 2024 motor-vehicle crash—"never went away" (*Culbreth II* Doc. 15), is not enough to allow Plaintiff to evade the duplicative action rule, especially where Plaintiff alleges ongoing injuries in *Culbreth I*. (*See Culbreth I* Compl. at 5 (alleging "headaches daily since the accident")).

Accordingly, because the allegations in the two actions are virtually identical, *Culbreth II* is dismissed as duplicative of *Culbreth I*.

II.  *Culbreth I*

Liberally construed, Plaintiff's Complaint in *Culbreth I* presses claims for: (1) deliberate indifference to serious medical needs, (2) *Monell* liability, and (3) a claim under New York state law.

    A.  Federal Claims for Relief

        i.  Exhaustion

As an initial matter, the *Culbreth I* Defendants argue that Plaintiff's federal claims must be dismissed for failure to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"). (*Culbreth I* Def. Br. at 9-12).

The PLRA provides that "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Inmates are not required to specially plead or demonstrate exhaustion in their

complaints. However, a district court may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016). "Indeed, courts within this District routinely grant motions to dismiss where a plaintiff's non-exhaustion is clear from the face of the complaint." *Hickman v. City of New York*, No. 20-CV-04699, 2021 WL 3604786, at *2 (S.D.N.Y. Aug. 12, 2021) (collecting cases). "To properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Even so, "a prisoner need not specifically plead or demonstrate exhaustion in the complaint because failure to exhaust administrative remedies is an affirmative defense under the PLRA, not a pleading requirement." *Rucker v. Giffen*, 997 F.3d 88, 92 (2d Cir. 2021); *see also Hudson v. Kirkey*, No. 20-CV-00581, 2023 WL 2324988, at *4 (N.D.N.Y. Mar. 2, 2023) ("[E]xhaustion is an affirmative defense, and the burden of proof at all times, remains on the defendant.").

New York, in general, has a multi-step "grievance process for inmates in its correctional facilities." *Armand v. Simonson*, No. 12-CV-07709, 2016 WL 1257972, at *16 (S.D.N.Y. Mar. 30, 2016). Plaintiff does not allege that he filed any grievance.[6] Plaintiff must therefore show that the grievance process was unavailable to him. *Ross v. Blake*, 578 U.S. 632, 635 (2016).

---

[6] Plaintiff, in his opposition to the motion, adds an allegation that he wrote "Captain Potter" and "Captain Moreno" about filing a grievance but received "no responses." (*Culbreth I* Pl. Letter at 2). But "[i]nformal complaints to prison officials do not constitute proper exhaustion," which requires a plaintiff to complete the administrative review process in accordance with the applicable procedural rules of the facility, including appealing decisions to the highest administrative level provided for in the process. *Harris v. Travers*, No. 20-CV-01482, 2023 WL 4708122, at *4 (N.D.N.Y. June 12, 2023), *adopted by*, 2023 WL 4708113 (N.D.N.Y. July 24, 2023).

An administrative procedure may be unavailable when (1) "'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'"; (2) it is "'so opaque that it becomes, practically speaking, incapable of use'"; or (3) "'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Williams v. Priatno*, 829 F.3d 118, 123-24, 123 n.2 (2d Cir. 2016) (quoting *Ross*, 578 U.S. at 643-44). Plaintiff does not allege that the grievance process either "operate[d] as a simple dead end" or was "so opaque that it [was] incapable of use." *Ross*, 578 U.S. at 643. Instead, Plaintiff's opposition submissions, liberally construed, invoke the third exception to the exhaustion requirement. Specifically, Plaintiff argues that his failure to comply with the PLRA's exhaustion requirement should be excused because OCCF staff prevented him from obtaining the necessary grievance forms. (*Culbreth I* Pl. Letter at 1, 4; *Culbreth I* Pl. Aff. #2 at 2). OCCF staff also allegedly sought to prevent Plaintiff from filing a grievance by telling him that "there [were] no grounds" for such a grievance and threatening Plaintiff with pepper spray. (*Culbreth I* Pl. Letter at 1-2). At the same time, Plaintiff has stated that he did not file a grievance because he thought the process was unnecessary as the events at issue involved a car accident. (*Culbreth I* Pl. Aff. #1 at 1).

These allegations, at a minimum, create ambiguity and an issue of fact about whether OCCF prison officials "thwart[ed]" Plaintiff "from taking advantage of a grievance process." *Ross*, 578 U.S. at 644. Given this ambiguity, "it would be premature to dismiss the Complaint at this stage, when it is possible that administrative remedies were rendered unavailable" to Plaintiff. *Wing v. Myers*, No. 18-CV-11056, 2019 WL 6732967, at *6 (S.D.N.Y. Dec. 11, 2019) (cleaned up); *see also Gunn v. Ayala*, No. 20-CV-00840, 2021 WL 5647795, at *7 (S.D.N.Y. Dec. 1, 2021) ("Because failure to exhaust is an affirmative defense and may be excused, courts in this Circuit

have denied motions to dismiss complaints brought on that basis, even where the plaintiff admits to failing to exhaust administrative remedies and does not allege facts explaining the failure." (collecting cases)). Indeed, that is all the more so here—where the Court "must liberally construe the pleadings of a pro se" and "Plaintiff does not bear the burden of pleading exhaustion."[7] *Wing*, 2019 WL 6732967, at *6. Because exhaustion is an affirmative defense to be pled and proven by the *Culbreth I* Defendants, and at this stage there are clear issues of fact, the Court cannot definitively rule on exhaustion. Discovery, undoubtedly, will be necessary for a proper resolution of this defense.

Accordingly, the *Culbreth I* Defendants' motion is denied with respect to their argument that Plaintiff failed to exhaust his administrative remedies.

    ii. Deliberate Indifference

Liberally construed, Plaintiff's first claim for relief is for deliberate indifference to serious medical needs. Plaintiff, in the Complaint, states that he was "awaiting sentencing" at the time of filing this action but does not specify his status at the time of the alleged constitutional deprivation. (*Culbreth I* Compl. at 2). Moreover, Plaintiff, in his *Culbreth II* Complaint, states that he was a pretrial detainee. (*Culbreth II* Compl. at 4). Deliberate indifference claims are analyzed under the Eighth Amendment for convicted prisoners, and the Fourteenth Amendment for pretrial detainees. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Accordingly, as Plaintiff's status at the time of the alleged constitutional deprivation is unclear, the Court considers both standards for deliberate

---

[7] The *Culbreth I* Defendants, in Reply, accuse Plaintiff of "chang[ing]" his "narrative" in his opposition submissions. (Reply at 6-7). But these differing "narrative[s]"—especially given Plaintiff's *pro se* status—only underscore the ambiguity in the current record about whether OCCF prison officials thwarted Plaintiff from taking advantage of a grievance process.

indifference, under the Eighth and Fourteenth Amendments. *See, e.g.*, *Mitchell v. City of New York*, No. 23-CV-04348, 2023 WL 5433859, at *3 n.3 (S.D.N.Y. Aug. 22, 2023).

To state a deliberate indifference under both the Eighth and the Fourteenth Amendments, a plaintiff "must satisfy what are commonly referred to as the 'objective and subjective prongs.'" *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020). "The first element 'is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment.'" *Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454, 464 (S.D.N.Y. 2023) (quoting *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-06301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018)). The objective component requires that the alleged deprivation in medical care be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). A deprivation in medical care is sufficiently serious if (1) "the prisoner was actually deprived of adequate medical care" and (2) "the inadequacy in medical care is sufficiently serious." *Id.* at 279-80. The latter inquiry "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see also Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (holding that the medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain"). When medical treatment was provided, but a complaint alleges that treatment was delayed or inadequate, the relevant concern is the "particular risk of harm faced by a prisoner due to the challenged deprivation of care." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

The second prong of the deliberate indifference test under the Fourteenth Amendment "applies differently [from] claims under the Eighth Amendment." *Dumel*, 656 F. Supp. 3d at 465 (quoting *Howard v. Brown*, No. 15-CV-09930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018)). Under the Eighth Amendment standard, the plaintiff must demonstrate that the defendant

had a sufficiently culpable state of mind. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). That is, the prisoner must state facts showing that the defendant "acted or failed to act while actually aware of a substantial risk that serious inmate harm will result." *Horace*, 802 F. App'x at 14. By contrast, under the Fourteenth Amendment standard, a detainee asserting a "claim for deliberate indifference to his medical needs can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021) (emphasis in the original; quoting *Charles*, 925 F.3d at 87).

The *Culbreth I* Defendants argue that even if Plaintiff's actions satisfy the PLRA exhaustion requirement, Plaintiff fails to adequately plead the subjective element of his deliberative indifference claim. (*Culbreth I* Def. Br. at 9-12). The Court agrees. Plaintiff alleges that following the motor-vehicle accident, he "threw up" multiple times "inside [his] cell" and suffered from a "migraine." (*Culbreth I* Compl. at 4). Plaintiff was then allegedly "refused medical attention." (*Id.* at 5). These allegations are insufficient to allow the Court to infer that any Defendant knew, or should have known, of a substantial risk to Plaintiff's health and disregarded it. *See Porter v. Bunch*, No. 16-CV-05935, 2019 WL 1428431, at *10 (S.D.N.Y. Mar. 29, 2019) (dismissing a deliberate indifference claim and explaining that the fact that plaintiff's "injuries were visible" were not adequate, on its own, to put the defendant "on notice that his injuries were severe"); *Peachey v. Zayaz*, No. 23-CV-06409, 2024 WL 4932527, at *4 (S.D.N.Y. Dec. 2, 2024) (dismissing a pre-trial-detainee plaintiff's deliberate indifference claim despite the plaintiff alleging that he suffered from "severe pain, [a] headache, [a] fever," and "body ac[hes]"). To that end, OCCF staff instructed Plaintiff on how to receive medical treatment: he "had to be put in a

13

sick call." (*Culbreth I* Compl. at 5). Plaintiff fails to allege any facts for the Court to infer that any Defendant knew or should have known that regular "sick call" would be insufficient, and that Plaintiff instead needed immediate care. *See Vail v. City of New York*, No. 18-CV-11822, 2020 WL 3548074, at *9 (S.D.N.Y. May 15, 2020) (holding that the plaintiff failed to adequately plead the subjective prong because the plaintiff failed to "allege[] that any [of the defendants] intentionally delayed medical attention" or "knew or should have known that the delay would cause substantial harm"), *adopted by*, 2020 WL 3547736 (S.D.N.Y. June 30, 2020).

Accordingly, Plaintiff's claim for deliberate indifference to serious medical needs is dismissed.[8]

### iii. *Monell* Liability

Plaintiff's second claim for relief is brought under *Monell*. Under *Monell* and its progeny, a municipality may be held liable where a plaintiff's constitutional rights are violated because of a municipal policy or custom. *See Jimenez v. City of New York*, No. 18-CV-07273, 2020 WL 1467371, at *3 (S.D.N.Y. Mar. 26, 2020) ("Plaintiff must plead allegations that 'the government body *itself* subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011))). "[T]o prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the injury." *Triano v. Town of Harrison, New York*, 895 F. Supp. 2d 526, 531 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008)). Such a claim "cannot lie in the absence of

---

[8] Given the conclusions reached herein, the Court need not and does not reach the *Culbreth I* Defendants' arguments regarding the objective prong of the deliberate indifference analysis. (*Culbreth I* Def. Br. at 17-18).

an underlying constitutional violation." *Galgano v. Cnty. of Putnam*, No. 16-CV-03572, 2020 WL 3618512, at *9 (S.D.N.Y. July 2, 2020) (quoting *DeRaffele v. City of New Rochelle*, No. 15-CV-00282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017)).

Because Plaintiff fails to plausibly allege a violation of a constitutional right, any *Monell* claim must be dismissed. *See Schultz v. Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) ("Because [the plaintiff] was unable to establish an underlying violation of his constitutional rights . . . his . . . *Monell* claim necessarily fail[s] as well."); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."). In addition, Plaintiff has not alleged any municipal custom or policy that was violated here; and that failure is likewise fatal to a *Monell* claim. *See, e.g.*, *Williams v. Fryermuth*, No. 23-CV-02156, 2024 WL 4557444, at *5 (S.D.N.Y. Oct. 23, 2024).

B. <u>State Claim for Relief</u>

Examining the Complaint with the liberality required of *pro se* pleadings, the Court has construed the pleading as also asserting a claim for common-law negligence under New York state law. The *Culbreth I* Defendants argue that the state-law claim should be dismissed because Plaintiff "failed to file a notice of claim against the County Defendants raising that claim, as required by New York General Municipal Law §50-e." (*Culbreth I* Def. Br. at 21).

General Municipal Law § 50–e requires service of a notice of claim within 90 days after a claim arises "[i]n any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation . . . or any officer, appointee or employee thereof." N.Y. Gen. Mun. Law § 50–e(1). The notice of claim requirement applies to Plaintiff's state-law claim for relief sounding in

15

negligence. *See Brown v. City of New York*, No. 18-CV-03287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) ("Under New York law, a plaintiff asserting tort claims against the City or its employees must file a notice of claim within ninety days after the incident giving rise to the claim and commence the action within a year and ninety days from the date of the incident"). It has been more than 90 days since January 2, 2024 (*i.e.*, the date on which Plaintiff's claim arose), and Plaintiff has not pled that he filed a notice of claim. Thus, Plaintiff's state-law claim for relief must be dismissed for failure to comply with the notice of claim requirement. *See, e.g.*, *Brown v. Cnty. of Westchester*, No. 22-CV-06146, 2024 WL 21937, at *10 (S.D.N.Y. Jan. 2, 2024).

Any state law claim Plaintiff wishes to press are, accordingly, dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, the *Culbreth I* Defendants' motion to dismiss is GRANTED, and the *Culbreth II* Defendants' unopposed motion to dismiss is GRANTED. *Culbreth II*, 24-CV-02148, is dismissed as duplicative of *Culbreth I*.

Because Plaintiff may be able to allege additional facts to state valid claims for relief under 42 U.S.C. § 1983 in *Culbreth I*, the Court grants Plaintiff 30 days' leave to amend the Complaint in *Culbreth I*, 24-CV-00497. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). Because of the rulings herein, any amendment Plaintiff asserts is limited to claims under 42 U.S.C. § 1983. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within 30 days of the date of this Order, caption the document as a "Amended Complaint," and label the document with docket number 24-CV-00497 (PMH). If Plaintiff fails to comply within the time allowed, or fails to follow

the limiting instructions concerning amendments, and he cannot show good cause to excuse such failure, the Court will dismiss this action with prejudice.

The Clerk of Court is respectfully requested to: (1) terminate the pending motion in *Culbreth v. Manuel et al.*, 24-CV-00497 (Doc. 32); (2) close the case captioned *Culbreth v. Manuel et al.*, 24-CV-02148; and (3) mail a copy of this Opinion and Order to Plaintiff.

**SO ORDERED.**

Dated: White Plains, New York
January 6, 2025

PHILIP M. HALPERN
United States District Judge